UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MATTHEW E.B. DEBOCK,<br><br>         Plaintiff,<br><br>    v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>         Defendant. | 3:15-CV-0447-LRH-WGC<br><br>ORDER |

Before the court is defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss complaint. Doc. #4.[1] Plaintiff Matthew E.B. DeBock ("DeBock") filed an opposition (Doc. #10) to which UPS replied (Doc. #11).

**I.    Facts and Procedural History**

Plaintiff DeBock was employed by defendant UPS as a part-time sorter from December 5, 2005, until his termination in June 2014. At the time of his termination DeBock was allegedly on leave under the Family and Medical Leave Act ("FMLA") and staying at a residential rehabilitation facility for a serious health condition.

While employed by UPS, DeBock was a member of the Teamsters, Chauffeurs, Warehousemen & Helpers and Professional, Clerical, Public and Miscellaneous Employees, Local

---

[1] Refers to the court's docket number.

1  Union No. 533 of Donner and The Tahoe Basin, Reno and Northern Nevada ("Local 533"), a labor
2  organization. During the relevant time period, Local 533 and UPS had a collective bargaining
3  agreement ("CBA") that governed the employment relationship between UPS and its employees
4  titled "Northern California Supplemental Agreement between Teamster Local Union Nos. 70, 87,
5  137, 150, 278, 287, 315, 386, 431, 439, 490, 533, 624, 665, 856, 890, 912, 948 and United Postal
6  Service" ("Local Agreement").[2] There was also another agreement titled "National Master United
7  Postal Service Agreement" ("National Agreement") that governed all employment relationships
8  with UPS and all Teamster Unions.[3]

   On July 29, 2015, DeBock filed a complaint against UPS alleging nine causes of action:
(1) breach of contract - FMLA leave, (2) breach of contract - failure to follow established policies
or procedures, (3) breach of covenant of good faith and fair dealing - contract damages, (4) breach
of covenant of good faith and fair dealing - tort damages, (5) tortious discharge, (6) wrongful
termination, (7) intentional infliction of emotional distress, (8) negligence, and (9) retaliatory
termination. Doc. #1, Exhibit 2. Thereafter, UPS filed the present motion to dismiss. Doc. #4.

**II.    Legal Standard**

Defendant UPS seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a

---

[2] A copy of the Local Agreement is attached as Exhibit 2 to UPS's motion to dismiss. *See* Doc. #4, Exhibit 2.

[3] A copy of the National Agreement is attached as Exhibit 1 to UPS's motion to dismiss. *See* Doc. #4, Exhibit 1.

formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

**III.   Discussion**

In its motion, defendant UPS argues that all of DeBock's claims are preempted by Section 301 of the Labor Management Relations Act and should be dismissed for failure to exhaust the grievance procedures of the relevant CBAs. *See* Doc. #4.

Section 301 of the Labor Management Relations Act ("LMRA"), found at 29 U.S.C. § 185, vests district courts with jurisdiction over suits alleging a violation of a collective bargaining

3

agreement. 29 U.S.C. § 185(a). Section 301 completely preempts any state law causes of action based on alleged violations of contracts between employers and labor organizations. *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). "The preemptive force of Section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pacific Racing Assoc.*, 854 F.2d 1142, 1146 (9th Cir. 1988). Thus, Section 301 extends not only to "claims founded directly on rights created by collective bargaining agreements, [but] also [to] claims which are substantially dependent on analysis of a collective bargaining agreement." *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008).

However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by [S]ection 301." *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285 (9th Cir. 1989) (quotations omitted). Rather, state law claims are only preempted by Section 301 if the claims are (1) based upon a CBA, or (2) dependent upon an interpretation of a CBA. *See Ramirez*, 998 F.2d at 748; *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir. 2000). To determine if a claim is dependent upon the interpretation of a CBA, a court must analyze whether the state law claim can be resolved simply by looking to the CBA as opposed to interpreting it. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2012). A state law claim is independent of a CBA if "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).

If a claim is preempted by Section 301, the court either must treat the claim as a Section 301 claim or dismiss the claim as preempted by federal law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). If a claim is converted by the court then the employee seeking to vindicate his rights under a CBA must first attempt to exhaust any mandatory grievance procedures outlined in the CBA. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007).

///

Here, the court finds that DeBock's claims for breach of contract and breach of the implied covenants of good faith and fair dealing are preempted by Section 301 because these claims require interpretation of the underlying CBAs. In his complaint, DeBock bases his breach of contract and implied covenant claims on alleged violations by UPS of the leave and grievance procedures outlined in the CBAs. For example, DeBock's breach of contract claims allege that "UPS contractually agreed that it would comply with, and afford its employees the benefits of, the FMLA" as well as "provide certain rights to any employee subject to discharge or suspension" but UPS breached these contractual obligations by failing to provide DeBock with the contracted rights. *See* Doc. #1, Exhibit 2, p. 3-4. Similarly, DeBock's implied covenant claims allege that UPS "deliberately countervened the intention and spirit" of the CBAs by terminating DeBock when he was on leave despite "the terms of the contract." *See* Doc. #1, Exhibit 2, p. 5-6. Resolving these claims necessarily requires interpreting the terms of the CBAs to determine DeBock's rights to FMLA leave and other leave during his employment. Moreover, these claims are classic examples of claims consistently preempted by Section 301. *See e.g., Newberry*, 854 F.2d 1142; *Hernandez, et al. v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073 (D. Nev. 2012); *Miller v. Mach 4, LLC.*, 2012 U.S. Dist. LEXIS 93483 (D. Nev. 2012).

Similarly, the court finds that DeBock's claims for wrongful termination and tortious discharge are also preempted by Section 301. In these claims, DeBock simply alleges that UPS wrongfully terminated him from his position rather than grant him FMLA leave. However, the CBAs govern UPS's right to discharge employees along with DeBock's right to employment leave. Thus, resolution of DeBock's wrongful termination claim necessarily depends on the interpretation and analysis of CBA terms similar to his breach of contract claims. Moreover, "[w]rongful discharge claims are precisely the kinds of claims that are usually preempted, since such claims typically amount to allegations that an employer had breached a CBA." *Berrymen v. Caesar's Palace*, 2012 U.S. Dist. LEXIS 23565, *9 (D. Nev. 2012). The allegations in DeBock's complaint to support his wrongful termination and tortious discharge claims are no different. Therefore, the

5

court finds that DeBock's wrongful discharge claim is preempted by Section 301.

DeBock's remaining claims for retaliatory discharge, intentional infliction of emotional distress, and negligence, are also preempted by Section 301 as resolution of these claims would require interpreting various terms in the CBAs. All of these claims are based on the same allegations that UPS terminated his employment rather than provide him medical leave. However DeBock names or characterizes these claims, the underlying allegations are the same as in his previous claims. Further, these claims are so inextricably linked to his other claims that it would be impossible for the court to separate these few claims from his other claims as resolution of these claims rely on the same facts and contract terms as his contract based claims. Therefore, the court finds that resolution of these claims would be dependent upon interpretation of the CBAs and thus, these claims are also preempted by Section 301. Accordingly, the court shall grant UPS's motion to dismiss.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Doc. #4) is GRANTED. Plaintiff's complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

DATED this 20th day of November, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE